# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**BRIAN P. CUNNINGHAM,**
    Debtor

Chapter 7
Case No. 05-23823-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ROBERT J. BELAND, ADMINISTRATOR**
**OF THE ESTATE OF JASON J. BELAND,**
    Plaintiff

v.

**BRIAN P. CUNNINGHAM,**
    Defendant

Adv. P. No. 06-1086

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are Cross-Motions for Summary Judgment filed by the

Plaintiff, Robert J. Beland ("Beland"), the administrator of the estate of Jason J. Beland,

pursuant to his appointment as administrator by the Massachusetts Probate Court, Bristol

County, on June 10, 1999, and by the Defendant, Brian P. Cunningham ("Cunningham" or

1

the "Debtor"), with respect to Beland's Second Amended Complaint. Through his

Complaint, Beland[1] seeks a determination that a default judgment entered against

Cunningham in the sum of $766,000.00, plus interest in the sum of $482,269.43 is

nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt "for willful and malicious

injury by the debtor to another entity."

Jason Beland was killed on December 28, 1996 by a stab wound to the chest which

punctured his heart. Beland, individually and as administrator of Jason's estate, and his

spouse, Edwina Beland, commenced a wrongful death action against Cunningham in the

Brockton District Court which was removed to the Plymouth Superior Court, Department

of the Trial Court. They accused Cunningham of stabbing Jason to death. The Belands

sued Cunningham several years after the Fall River District Court, following a two-day

probable cause hearing, found no probable cause to charge Cunningham with the murder

of Jason Beland.[2] *See* MetLife Auto & Home v. Cunningham, 59 Mass. App. Ct. 583, 584

(Mass. App. Ct. 2003), *review denied*, 440 Mass. 1110 (2003). In conjunction with the

wrongful death suit, the Belands and Cunningham executed a written agreement pursuant

to which Cunningham assented to the entry of a default judgment as to his liability for

negligently causing Jason Beland's death. That agreement, which contained a provision

recognizing Cunningham's intention to invoke his constitutional rights under the Fifth

---

[1] Beland is Jason Beland's father and is administering Jason Beland's estate on behalf of Jason's daughter, Kyara Marie Beland.

[2] Cunningham was charged under Mass. Gen. Laws ch. 265, § 1. The criminal complaint was filed against Cunningham by the Massachusetts State Police.

Amendment against self-incrimination, also provided that "by accepting a negligence judgment, the Plaintiffs [the Belands] will waive any further arguments that the resulting judgment against Mr. Cunningham is immune from discharge in bankruptcy by virtue of intentional tort."

The issues presented by the Cross-Motions include whether Beland sustained his burden of establishing that the judgment against Cunningham was the result of a willful and malicious injury, and whether the agreement between Beland and Cunningham in the wrongful death suit now precludes Beland from pursuing his claim under § 523(a)(6). The Court held a hearing on Beland's Motion for Summary Judgment on February 6, 2007, following which the Court established a deadline for the Debtor to file his own Motion for Summary Judgment and for Beland to file a response to that motion. The parties filed a Joint Stipulation Regarding Discovery and Trial, to which they attached numerous documents, as well as briefs. The material facts necessary to decide the Cross-Motions are not in dispute. The Court also takes judicial notice of the decision of the Massachusetts Appeals Court in MetLife Auto & Home v. Cunningham. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

Jason Beland died of a stab wound on December 28, 1996. According to the Massachusetts Appeals Court, and the docket of the criminal proceeding in the Taunton District Court, Cunningham was arrested, charged with the stabbing death of Jason Beland, and released on $25,000.00 bail. MetLife, 59 Mass. App. Ct. at 584. The Appeals Court

3

observed that the testimony at the probable cause hearing "suggested that Cunningham

and three female companions had been accosted by three young men who yelled at them

and followed them, and one of whom, brandishing a machete, told the women before they

ran from the scene, 'We're going to cut up your boy,' 'boy' being a reference to

Cunningham." Id. at 587 n.7.[3]

The Belands commenced a civil action for wrongful death against Cunningham on

December 31, 1999. Their Complaint contained six counts.[4] They alleged that Cunningham

"had 'negligently, recklessly and/or intentionally and without justification' stabbed Jason

and thereby caused his suffering and death." Id. at 584. Cunningham, in response to

discovery requests, asserted his Fifth Amendment right against self-incrimination. Id. at

584-85.

Before Jason Beland died, MetLife had issued to Cunningham's mother, Diane

Cunningham, a homeowner's insurance policy which provided her and members of her

household with liability coverage up to a limit of $100,000.00. The policy required MetLife

to defend against covered liability. Cunningham, because he was a household member,

was an insured under the policy. Id. at 585. MetLife undertook a defense of the Belands'

---

[3] The Appeals Court also noted that the record before the Superior Court
included "an affidavit from the Belands' attorney stating that his investigation revealed
'no potential eyewitnesses to the killing of Jason.'" 59 Mass. App. Ct. at 586.

[4] Count I provided the following:
the First Cause of Action is an action pursuant to G.L. c. 229, § 2, by Robert
J. Beland, as Administrator of the Estate of Jason J. Beland, against the
defendant, Brian P. Cunningham, for negligence, and/or recklessness
and/or intentional misconduct resulting in wrongful death.

wrongful death action against Cunningham under a reservation of rights.   <u>Id.</u>

Cunningham invoked the Fifth Amendment, however, whenever he was questioned about

Jason Beland's death.   <u>Id.</u>

Counsel to the Belands contacted MetLife sometime in the summer of 2000, asserting

that it engaged in unfair and deceptive acts or practices.   In response, MetLife, in a letter

dated August 17, 2000, stated:

> Based upon the nature of your clients' allegations against Brian
> Cunningham, as well as Metropolitan's thorough and comprehensive claim
> investigation, the company has concluded there is no coverage under the
> applicable policy of insurance for claims presented by your clients.
> Accordingly, Metropolitan is under no obligation to tender a settlement offer
> to your clients.

Thereafter, MetLife filed a declaratory judgment action naming the Belands and

Cunningham, as well as Cunningham's mother, as defendants. 59 Mass. App. Ct. at 585

As in the Belands' wrongful death action, Cunningham repeatedly invoked his Fifth

Amendment rights, refusing to provide the Belands or MetLife with any information about

the stabbing.   The Superior Court eventually entered summary judgment in favor of

MetLife, and the Massachusetts Appeals Court affirmed its determination that

Cunningham's lack of cooperation and the concomitant prejudice to MetLife relieved

MetLife of its contractual obligation to defend and indemnify Cunningham.

After MetLife had rejected the Belands' demand for a settlement but before the

decision of the Massachusetts Appeals Court, Beland, individually and as administrator

of the estate of Jason Beland, together with Edwina Beland, and Cunningham, executed a

five-page  agreement, dated March 27, 2001, (the "Agreement") which contained the

5

following recitation of pertinent facts:

> **WHEREAS,** the Plaintiffs have offered to provide the Defendant a release of all claims in exchange for payment of the $100,000 coverage limit, and the Insurer has refused due to its assertion that it need not extend coverage to the Plaintiffs' based on the so-called "intentional acts" exclusion . . .; and

<div align="center">***</div>

> **WHEREAS,** the undersigned parties believe that, even with disputed liability, the reasonable settlement value of a wrongful death case such as this one meets or exceeds $100,000; and

> **WHEREAS,** the Defendant intends to assert his constitutional rights against self-incrimination throughout this proceeding, despite the potential that such assertion would have adverse consequences in a civil trial; and

> **WHEREAS,** the Defendant wishes to avoid potential exposure to punitive damages which may be outside of the coverage afforded by the insurer's policy; and

> **WHEREAS,** there are presently pending in this action motions filed by the Plaintiffs seeking summary judgment as to the affirmative defenses of self-defense and comparative negligence, and to deem admitted pursuant to Mass. R. Civ. P. 36 Requests for Admission that the Defendant negligently or recklessly caused Jason Beland's death . . . .

Based upon these considerations, the parties agreed to the following:

> 1. The Defendant will withdraw his opposition to the pending Motion for Summary Judgment and Motion to Deem Matters Admitted (So far as the admissions focus on negligence), and each of these motions will be allowed by operation of Superior Court Rule 9A. *The parties recognize and intend that the effect of the allowance of the motions will be judgment(s) in favor of the Plaintiffs sounding in negligence on the issue of responsibility for Jason Beland's death* and on the absence of comparative negligence on the part of Jason Beland. The Defendant does not waive proof of the additional elements of the Plaintiffs' emotional distress claims; nor does the Defendant waive proof of damages.

> 2. After allowance of the motions, the resulting liability judgment shall be entered based only on negligence. Accordingly, *the Plaintiffs will waive claims for punitive damages.* In addition, *by accepting a negligence judgment, the*

*Plaintiffs will waive any future arguments that the resulting judgment against Mr. Cunningham is immune for discharge in bankruptcy by virtue of intentional tort.*

\*\*\*

4. After entry of judgment in this action, the Defendant will assign to the Plaintiffs any and all rights of the Defendant against MetLife. . . . In exchange, the Plaintiffs agree to refrain from any efforts to directly collect the judgment from the Defendant until after exhausting litigation with MetLife.

5. In the event any court rules that enforcement of this Agreement would operate to relieve the Insurer of coverage obligations that would otherwise exist, the Plaintiffs shall have ninety (90) days from the receipt of notice of the final determination of such ruling, including appeals, to rescind this Agreement and re-open or recommence this civil action. . . .

(Emphasis supplied).

Following the parties' agreement, there was little activity in the Plymouth Superior Court wrongful death action. In the meantime, the Massachusetts Appeals Court issued its decision on October 15, 2003, which the Supreme Judicial Court refused to review by order dated December 29, 2003.

On March 12, 2004, the Plaintiffs filed a Motion to Enforce Agreement of March 27, 2001.[5] Although the docket reflects that the motion was scheduled for a hearing on April 7, 2004, the docket does not specifically reflect whether the motion was granted or denied. On February 23, 2005, however, apparently in response to the scheduling of a status conference, Beland filed a "Damages Memorandum" in the Plymouth Superior Court, in

---

[5] Through their Motion, the Belands asked the Superior Court to 1) allow their Motion for Partial Summary Judgment as to the Defendant's affirmative defenses of self-defense and comparative negligence; 2) allow the Plaintiff's Motion to Deem Matters Admitted in so far as finding that Cunningham negligently caused the death of Jason Beland; and 3) strike their claim for punitive damages.

which he admitted that "[a]s a result of the Court's rulings pursuant to an agreement among the parties, the defendant has withdrawn his defense and will accept a [judgment] in favor of the plaintiffs sounding in negligence on the issue of responsibility for Jason Beland's death and on the absence of comparative negligence on the part of Jason Beland," adding that "the plaintiffs have agreed to forego claims of intentional misconduct and any punitive damages." Approximately one month later, the Superior Court issued its "Finding and Order on Plaintiff's Motion to Assess Damages." In its ruling the Superior Court stated: "[a] default was entered against the defendant, and the case was marked for hearing on assessment of damages for February 23, 2005." It stated: "the issue of the defendant's liability for the death is not at issue since the defendant has been defaulted." Based upon the testimony and evidence, the Superior Court assessed damages against Cunningham for the benefit of Kyara Marie Beland in the amount of $766,000.00. On March 29, 2005, the clerk entered Judgment by Default Upon Assessment of Damages, on Count I of the Belands' Complaint in favor of Beland as Administrator of the Estate of Jason J. Beland and against Cunningham in the sum of $766,000.000 plus interest in the sum of $482,269.43. The judgment also provided for the dismissal of Counts II, III, IV, V, and VI.

Less than six months after the Plymouth Superior Court entered its judgment in favor of Beland on Count I, Cunningham, on October 15, 2005, filed a voluntary Chapter 7 petition. Other than a single credit card debt and a secured automobile loan, he did not list any debts unrelated to the judgment entered in favor of Beland in the wrongful death suit.

8

In conjunction with the present adversary proceeding, the parties have stipulated that Cunningham will assert his Fifth Amendment rights in answer to any questions, whether raised in discovery or during trial, relating to the incident that occurred on December 28, 1996.

## III. DISCUSSION

A. Summary Judgment Standard

In Sullivan v. Decision One Mtg. (In re Sullivan), 346 B.R. 4 (Bankr. D. Mass. 2006), this Court, citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760 (1st Cir. 1994), summarized the applicable standard for entering summary judgment in the First Circuit. In Desmond, the First Circuit stated:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. See Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir.1991); Bias v. Advantage Int'l, Inc., 905 F.2d 1558, 1560-61 (D.C.Cir.), cert. denied, 498 U.S. 958, 111 S.C[t]. 387, 112 L.Ed.2d 397 (1990); cf. Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4, 7 (1st Cir.1990) ("The mere fact that plaintiff failed to file a timely opposition does not mean that defendant's Rule 56 motion should be granted"). When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. See, e.g., Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir.1994); Garside, 895 F.2d at 48; Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 934 (1st Cir.1987). This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. See Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir.1992) (warning that summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed

evidence").

37 F.3d at 763 (footnote omitted). *See* In re Sullivan, 346 B.R. at 18. This Court in Sullivan,

also recognized that the First Circuit cautioned:

> As to issues on which the nonmovant [the Debtor in this case] has the burden
> of proof, the movant need do no more than aver "an absence of evidence to
> support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317,
> 325, 106 S.C[t]. 2548, 2553-54, 91 L.Ed.2d 265 (1986). The burden of
> production then shifts to the nonmovant, who, to avoid summary judgment,
> must establish the existence of at least one question of fact that is both
> "genuine" and "material." *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
> 248, 106 S.C[t]. 2505, 2510, 91 L.Ed.2d 202 (1986); Garside, 895 F.2d at 48-49.

Id. at 763 n. 1. *See* Sullivan 346 B.R. at 18. Moreover, this Court recognized the import of

the First Circuit's decision in DiStefano v. Stern (In re JFD Enters., Inc.), 215 F.3d 1312, 2000

WL 560189 (1st Cir.2000), in which the First Circuit stated:

> [S]ummary judgment is appropriate if the nonmovant's evidence is "merely
> colorable, or is not significantly probative." Anderson v. Liberty Lobby, Inc.,
> 477 U.S. 242, 249-50, 106 S.C[t]. 2505, 91 L.Ed.2d 202 (1986) (citations
> omitted). "The mere existence of a scintilla of evidence in support of the
> plaintiff's position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff." Id. at 252[, 106 S.Ct. 2505]. We
> will not "accept the nonmovant's subjective characterizations of events,
> unless the underlying events themselves are revealed." Simas v. First
> Citizens' Fed. Credit Union, 170 F.3d 37 (1st Cir.1999); *see also* Liberty Lobby,
> 477 U.S. at 256, 106 S.Ct. 2505; Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 6
> (1st Cir.1998).

215 F.3d 1312, 2000 WL 560189 at *3. *See* Sullivan, 346 B.R. at 18-19.

B. Analysis

1. Beland's Motion for Summary Judgment

Section 523(a)(6) of the Bankruptcy Code excepts debts for willful and malicious

injury by the debtor to another entity from discharge under 11 U.S.C. § 727(a). "To prevail

10

on a complaint to except a debt from discharge, as one caused by a debtor's 'willful and malicious injury,' a creditor must prove that (1) the debtor caused him or her injury; (2) the debtor's actions were malicious; and (3) the debtor's actions were willful." Jones v. Svreck (In re Jones), 300 B.R. 133, 139 (B.A.P. 1st 2003). The standard of proof for dischargeability exceptions is the preponderance of the evidence standard. Grogan v. Garner, 498 U.S. 279, 290 (1991).

In Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998), the United States Supreme Court construed the phrase "willful and malicious injury" to apply only to deliberate and intentional injuries, not merely deliberate or intentional acts that lead to injury. According to the Supreme Court, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.' Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added)." Id. at 61-62. The Court concluded: "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64.

Without regard to the issue of whether Beland is bound by the terms of the March 27, 2001 agreement, the Court finds that Beland has submitted insufficient evidence to warrant summary judgment in his favor. At most, the evidence Beland submitted established that Cunningham caused the death of Jason Beland. The information contained in the record and the information that can be gleaned from the decision of the Massachusetts Appeals Court in MetLife Auto & Home v. Cunningham compel the

11

conclusion that, absent an adverse inference that Cunningham willfully and maliciously

intended to injure Beland arising from his invocation of the Fifth Amendment, there is no

evidence in the record as to Cunningham's state of mind at the time he stabbed Jason

Beland.

Cunningham was charged under Mass. Gen. Laws ch. 265, § 1, which provides:

> Murder committed with deliberately premeditated malice aforethought, or
> with extreme atrocity or cruelty, or in the commission or attempted
> commission of a crime punishable with death or imprisonment for life, is
> murder in the first degree. Murder which does not appear to be in the first
> degree is murder in the second degree. Petit treason shall be prosecuted and
> punished as murder. The degree of murder shall be found by the jury.

Mass. Gen. Laws ch. 265, 1.[6] Cunningham was not charged with manslaughter pursuant

to Mass. Gen. Laws ch. 265, § 13.

In Commonwealth v. Sneed, 413 Mass. 387 (1992), the Supreme Judicial Court set

forth the means by which the prosecution can establish malice for purposes of obtaining

a conviction for first or second degree murder.[7] It stated:

> Malice as an element of murder may be proved by evidence establishing any
> one of three facts beyond a reasonable doubt: if, without justification or
> excuse, (1) the defendant intended to kill the victim (the so-called first prong
> of malice), or (2) the defendant intended to do the victim grievous bodily
> harm (the second prong), or (3) in the circumstances known to the defendant,
> a reasonably prudent person would have known that, according to common
> experience, there was a plain and strong likelihood that death would follow

---

[6] Within that framework, a trial judge may instruct the jury on lesser included
crimes of second degree murder, manslaughter, assault and battery or simple assault.
32 Mass. Prac., Criminal Law § 188 (3d ed.).

[7] "An indictment of murder in either degree must allege a killing with malice."
32 Mass. Prac., Criminal Law § 173 (3d ed.).

the contemplated act (the third prong).

Id. at 388 n. 1 (citing Commonwealth v. Grey, 399 Mass. 469, 470 n. 1, 505 N.E.2d 171 (1987)). As noted, shortly after Jason Beland's death, the District Court conducted a two-day probable cause hearing after which it ruled that there was no probable cause for a murder charge using the preponderance of the evidence standard applicable to that proceeding. See Joint Stipulation Regarding Discovery and Trial at ¶ 4. In short, the prosecution failed to submit sufficient evidence of malice to warrant further proceedings against Cunningham, a circumstance which may have been attributable to the absence of eyewitnesses or possible misconduct on the part of Cunningham or people with whom he was associated. See 59 Mass. App. Ct. At 587 n.7.

"Both murder in the first degree and murder in the second degree require proof of malice, without which 'an unlawful killing can be no more than manslaughter.'" Commonwealth v. Gilbert, 447 Mass. 161, 171-72 (2006). "A jury instruction on voluntary manslaughter is warranted 'if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool.'" Commonwealth v. Seabrooks, 425 Mass. 507, 514 (1997). The crime of involuntary manslaughter, however, is not automatically a lesser included offense of murder. Commonwealth v. Dagenais, 437 Mass. 832, 842 (2002). It "'involves a high degree of likelihood that substantial harm will result to another.'" Id. (quoting Commonwealth v.

13

Sires, 413 Mass. 292, 303-04 n. 14 (1992)).[8] With respect to involuntary manslaughter, the

court in Commonwealth v. Sanna, 424 Mass. 92(1997) stated:

> [T]he difference between the elements of the third prong of malice and
> wanton and reckless conduct amounting to involuntary manslaughter lies in
> the degree of risk of physical harm that a reasonable person would recognize
> was created by particular conduct, based on what the defendant knew. For
> the purposes of third prong malice, the risk is that there was a plain and
> strong likelihood of death. The risk that will satisfy the standard for wilful
> and wanton conduct amounting to involuntary manslaughter involves a high
> degree of likelihood that substantial harm will result to another.
> Consequently, when it is obvious that the risk of physical harm to the victim
> created a plain and strong likelihood that death will follow, an instruction on
> involuntary manslaughter is not required.

Id. at 105. Manslaughter is "an unlawful homicide unintentionally caused by an act which

constitutes such a disregard of probable harmful consequences to another as to amount to

wanton or reckless conduct." Commonwealth v. Gonzalez, 443 Mass. 799, 808 (2005).

"While manslaughter requires an intentional act (or omission), it is not necessary to prove

that the defendant intended to kill. It is sufficient that the defendant intended the act

which resulted in the death." 32 Mass. Prac., Criminal Law § 201 (3d ed.)(citing

Commonwealth v. Bouvier, 316 Mass. 489, 494 (1944)).

Cunningham has consistently invoked his Fifth Amendment rights because he is not

immune from further prosecution. Double jeopardy did not attach to the district court's

---

[8] It has also been defined as "an unlawful homicide, unintentionally caused (1) in
the commission of an unlawful act, malum in se, not amounting to a felony nor likely to
endanger life (Anderson, Wharton's Criminal Law and Procedure, s. 289), or (2) by an
act which constitutes such a disregard of probable harmful consequences to another as
to constitute wanton or reckless conduct. Commonwealth v. Campbell, 352 Mass. 387,
397 (1967)(citations omitted).

finding of no probable cause under Massachusetts law. The Supreme Judicial Court "has consistently held that a District Court determination of no probable cause 'is not conclusive as to the guilt or innocence of a party charged, and is not a bar to a subsequent indictment for the same offense.'" *See* <u>Burke v. Commonwealth</u>, 373 Mass. 157, 159 (1977)  As a result, Cunningham could be charged with first degree murder or, conceivably, the lesser charges of voluntary or involuntary manslaughter.    Without an adverse inference from Cunningham's assertion of the Fifth Amendment privilege, however, this Court has no basis for finding premeditation or malice sufficient to establish a willful and malicious injury.

For Beland to prevail on his Motion for Summary Judgment, this Court would have to find that he established the second and third prongs of the <u>Jones</u> test, namely that the debtor's actions were malicious and that the debtor's actions were willful, based solely upon Cunningham's invocation of the Fifth Amendment.  Indeed, that is exactly what Beland urges this Court to do, by arguing that "the Fifth Amendment privilege against self-incrimination is not available in a dischargeablitiy proceeding under § 523."

The invocation of the Fifth Amendment in civil proceedings may be the subject of an adverse inference.  <u>In re Taylor Agency, Inc.</u>, 281 B.R. 354, 359 (Bankr. S. D. Ala. 2001)(citing <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318 (1976)).  *See also* <u>General Motors Acceptance Corp. v. Bartlett (In re Bartlett)</u>, 154 B.R. 827, 830 (Bankr. D. N.H. 1993)("adverse inferences may be drawn at the summary judgment stage as well as at trial").  Beland, however, must first offer probative evidence that Jason's death was caused

15

by a willful and malicious injury, as opposed to a negligent or reckless one. <u>Id.</u> In

<u>Trustmark Nat'l Bank v. Curtis (In re Curtis)</u>, 177 B.R. 717 (Bankr. S.D. Ala. 1995), the court

explained the rationale:

> A plaintiff seeking to rely on a Fifth Amendment inference must first offer
> evidence which at least tends to prove each part of the plaintiff's case. Once
> that has been done, the Court can then add to the weight of the other
> evidence by use of the inference. However, the invocation of the Fifth
> Amendment privilege, standing alone, is not sufficient evidence to constitute
> probative proof of a plaintiff's case.

<u>Id.</u> at 720.

The Plaintiffs argue that the Debtor's invocation of his Fifth Amendment privilege

requires a judgment in their favor, citing <u>Banknorth v. Vrusho (In re Vrusho)</u>, 321 B.R. 607

(Bankr. D. N. H. 2005). There the court excepted a debt from discharge because of the

debtor's failure to provide documents and answer interrogatories, ruling that: "By

invoking his Fifth Amendment privilege in refusing to provide information to the Plaintiff,

the Defendant chose protection from prosecution over protection from his creditors." <u>Id.</u>

at 613. Unlike the decision in <u>Vrusho</u> where there was circumstantial evidence in support

of the discharge exception in addition to the adverse inference to be drawn from the

assertion of the Fifth Amendment privilege, this Court finds that the only evidence

submitted by Beland was the agreement pursuant to which Cunningham admitted that he

negligently *caused* Jason Beland's death. Beland submitted no evidence of willfulness or

malice. Moreover, the Court finds that the Debtor produced sufficient evidence to rebut

any conclusion based upon the adverse inference to be drawn from his assertion of his Fifth

Amendment privilege. The decision of the District Court that there was no probable cause

for criminal proceedings after a two-day trial is probative that the Commonwealth could not establish the requisite intent to the murder. Although Beland proclaims that "[i]t would be a travesty to put the Plaintiff to the very considerable expense of tracking down witnesses to a ten year old event when the Defendant has already been adjudged responsible for Jason's death," Beland produced no evidence, circumstantial or otherwise, that would suggest that Cunningham intended the consequences of his act, namely causing Jason Beland's death by stabbing. Thus, even excluding the Belands' agreement to waive claims for punitive damages and "any future arguments that the resulting judgment against Mr. Cunningham is immune from discharge in bankruptcy by virtue of intentional tort," the Court finds that the Belands have not been able to produce evidence that Cunningham willfully and maliciously stabbed Jason Beland with the intention of causing him harm, or even that he wantonly and recklessly caused Jason's death without just cause or excuse. Given the absence of any evidence with respect to Cunningham's intent, the Court cannot draw an adverse inference of a willful and malicious injury based upon the information in the existing record. Because Cunningham potentially could be charged again with murder or the felony of involuntary manslaughter, which may or may not satisfy the elements of willfulness and malice, it is understandable why he has steadfastly refused to potentially incriminate himself. Nevertheless, in any criminal proceeding, defenses such as self-defense or diminished capacity would be available to him. This Court concludes that Beland cannot establish that he is entitled to summary judgment on the basis of an adverse inference from Cunningham's assertion of his Fifth Amendment rights.

*See* Geiger, 523 U.S. at 61-62 ("Intentional torts generally require that the actor intend 'the

*consequences* of an act,' not simply 'the act itself."). Thus, even if this Court were to infer

that Cunningham knew that it was substantially certain that Beland would be harmed, the

Court cannot infer that Cunningham's actions were without just cause or excuse.

Accordingly, the Court shall enter an order denying Beland's Motion for Summary

Judgment.

### 2. Cunningham's Motion for Summary Judgment

The success of the Debtor's Motion for Summary Judgment turns on the effect of the

March 27, 2001 Agreement and the Judgment by Default upon Assessment of Damages.

With respect to exceptions to discharge under § 523(a)(6), collateral estoppel principles may

apply. *See* Grogan v. Garner, 498 U.S. 279, 284 n. 11 (1991); Jones, 300 B.R. at 137. In Jones,

the United States Bankruptcy Appellate Panel for the First Circuit stated:

> Collateral estoppel bars relitigation of an issue previously decided if the
> party against whom the prior decision is asserted had a "full and fair
> opportunity" to litigate that issue in an earlier case. Allen v. McCurry, 449
> U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citations omitted). In Grella,
> the First Circuit stated:
>
>> [w]hen there is an identity of the parties in subsequent actions,
>> a party must establish four essential elements for a successful
>> application of issue preclusion to the later action: (1) the issue
>> sought to be precluded must be the same as that involved in
>> the prior action; (2) the issue must have been actually litigated;
>> (3) th e issue must have been determined by a valid and
>> binding final judgment; and (4) the determination of the issue
>> must have been essential to the judgment.
>
> 42 F.3d at 30. Further, "[a]n issue may be 'actually' decided even if it is not
> explicitly decided, for it may have constituted, logically or practically, a
> necessary component of the decision reached in the prior litigation." Id. at

18

30-31 (citing <u>Dennis v. Rhode Island Hosp. Trust</u>, 744 F.2d 893, 899 (1st Cir.1984) (emphasis in original)).

<u>Jones</u>, 300 B.R. at 137.  According to the Massachusetts Supreme Judicial Court, "[m]ost courts agree that under the full faith and credit statute, 28 U.S.C. § 1738 (1994), the preclusive effect of a State court judgment in a subsequent nondischargeability proceeding under Federal bankruptcy law is governed by the collateral estoppel law of the State from which the judgment is rendered." <u>Treglia v. MacDonald</u>, 430 Mass 237, 241 n.6 (1999). *See also* <u>Murray v. Wilcox (In re Wilcox)</u>, 229 B.R. 411, 415 (Bankr. N. D. Ohio 1998).

This Court finds that the Superior Court judgment, dated March 29, 2005, does not in and of itself, collaterally estop Beland from seeking to except that judgment from discharge.  The default judgment pertained, presumably, to Count I only, and the remaining counts were dismissed without prejudice.  In <u>Treglia</u>, the Supreme Judicial Court stated: "We reaffirm that preclusive effect should not be given to issues or claims that were not actually litigated." 430 Mass. at 242.  The Supreme Judicial Court, however, noted that exceptions to the general rule exist in circumstances where the debtor actively participated in the adversary process.  <u>Id.</u> (citing <u>In re Bush</u>, 62 F.3d 1319, 1324 (11th Cir. 1995); *See also* <u>Int'l Strategies Group, Ltd. v. Pomeroy (In re Pomeroy)</u>, 353 B.R. 371, 377 (Bankr. D. Mass. 2006).

This Court finds that both Beland and Cunningham actively participated in the wrongful death action, which was pending before the Superior Court for over four years and that the Agreement was in the nature of an agreement for judgment, though not captioned as such.  Indeed, the Belands acknowledged in their Damages Memorandum

19

that the Superior Court had issued rulings pursuant to the Agreement, presumably granting their Motion for Partial Summary Judgment and their Motion to Deem Matters Admitted and striking their claim for punitive damages. Moreover, in accordance with the Agreement, the Superior Court entered a judgment in favor of Beland on Count I and dismissed the remaining counts of the Belands' wrongful death suit.    Under these circumstances, this Court predicts that the Supreme Judicial Court would determine that issues pertinent to Cunningham's liability for intentionally tortious conduct were "actually litigated" for purposes of collateral estoppel and the default judgment was entered pursuant to the agreement of the parties, not because of the Debtor's failure to answer or as a sanction for failing to respond to discovery requests. The Agreement reflects Beland's determination that the benefit of pursuing MetLife for insurance proceeds relating to negligent conduct on Cunningham's part exceeded the benefit of pursuing the other counts set forth in wrongful death suit, particularly as the Belands' ability to prove intentionally tortious conduct was likely to be extremely problematic in view of Cunningham's assertion of his Fifth Amendment rights and the finding of lack of probable cause relating to the criminal prosecution.

Moreover, the Court finds that the Agreement executed by the parties on March 27, 2001 constitutes a binding agreement on Beland and precludes him from obtaining the relief he seeks now. The Agreement was drafted with an eye toward obtaining insurance proceeds from MetLife. Nevertheless, the parties enforced it *after* the Supreme Judicial Court refused to reconsider the decision of the Massachusetts Appeals Court in late

December 2003. Although a term in a contract exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable as against public policy, *see* Restatement (Second) of Contracts § 195, the parties agreement dated March 27, 2001, was made during the course of litigation, was in the nature of an agreement for judgment, and was enforced by the Superior Court as reflected in its March 29, 2005 judgment. Accordingly, this Court rejects Beland's assertion that the Agreement was the product of a mistake of law, particularly as any mistake should have been apparent to the Belands before they filed the Damages Memorandum, which precipitated the entry of judgment.

To repeat, the Court finds that the Agreement is binding upon Beland. Although the Agreement failed to produce the desired result, namely access to the MetLife insurance proceeds because of Cunningham's assertion of his Fifth Amendment rights for the reasons stated by the Massachusetts Appeals Court, the Agreement was crystal clear that Cunningham was not relinquishing his right to invoke the Fifth Amendment. Moreover, the Agreement was crystal clear as to what the Belands were prepared to waive to obtain access to the insurance proceeds in lieu of relying upon Cunningham's ability to satisfy a judgment for an intentional tort, and the Agreement was supported by adequate consideration. In exchange for consenting to a default judgment "sounding in negligence on the issue of responsibility for Jason Beland's death, Cunningham agreed to assign to the Plaintiffs any and all rights he had against MetLife. As further consideration for the opportunity to obtain the insurance proceeds, the Belands waived "any future arguments that the resulting judgment against Mr. Cunningham is immune from discharge in

21

bankruptcy by virtue of intentional tort."

The Agreement pursuant to which Cunningham admitted that he caused Jason's death was made in recognition of two significant concessions made by the Belands: Cunningham retained his right to assert his Fifth Amendment rights and they waived any future arguments that the resulting judgment against Cunningham was immune from discharge in bankruptcy by virtue of the commission of an intentional tort. Although Beland seeks to sidestep the Agreement by alleging it was the product of mutual mistake, the Court disagrees. Moreover, the parties adhered to the Agreement after the Supreme Judicial Court refused to review of the decision of the Massachusetts Appeals Court. Under these circumstances, the Court finds that Beland is bound by his knowing and voluntary waiver and release of the right to prosecute this nondischargeability complaint based upon an intentional tort.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order denying Beland's Motion for Summary Judgment and granting Cunningham's Motion for Summary Judgment.

By the Court,

_Joan N. Feeney_

_____

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 6, 2007
cc: Walter Oney, Esq., Henry C. Ellis, Esq.

22